**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CONVERSE JENKINS, III,**

          **Plaintiff,**        **CIVIL ACTION NO. 12-cv-12161**

   **vs.**

                      **DISTRICT JUDGE JOHN CORBETT O'MEARA**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

          **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Converse Jenkins seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security benefits for his physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 13). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.**     **RECOMMENDATION:**

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 10) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 13) be GRANTED.

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits and an Application for Supplemental Security Income Benefits with protective filing dates of September 14, 2008, alleging that he had been disabled since August 13, 2006, due to various physical impairments. (TR 143-150, 162-165.) The Social Security Administration denied benefits. (TR 51-55.) Plaintiff requested a *de novo* hearing, which was held on April 27, 2010, before Administrative Law Judge (ALJ) Roy Roulhac, who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing his past relevant work as a laundry laborer. (TR 17.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review. The parties then filed their Motions for Summary Judgment.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff was 53 years old at the time of the administrative hearing and 50 years old at the time of alleged onset. (*See* TR 14, 28.) Plaintiff has past work experience as a laundry laborer, where he would typically lift "at the most" five pounds as he moved handfuls of clothing from baskets to machines. (TR 29.) Plaintiff testified that he hadn't worked since 2005 due to back pain. (TR 31.) Plaintiff indicated that when he stands too long, his back irritates him; he also noted that the longer he avoids work and stays on his medication, the more the pain "dial[s] down." (TR 31.) Plaintiff testified that he lived with his mother-in-law and his wife and that he did not have any source of income. (TR 31.)

Plaintiff testified that his back problems start around his neck and work down his back into his pelvis. (TR 32.) He lived in a two-story house, and he indicated that he had a hard time going up the steps. (TR 34.) Plaintiff further testified that he could stand for 10 to 15 minutes, walk about

2

half a block, and sit for 15 minutes, as long as he took his medication.  (TR 35.)  He indicated that he could lift about 10 pounds.  (TR 35.)

Plaintiff testified that he started seeing Dr. Baul, his primary care physician, four years earlier and that he saw him approximately twice a month until Plaintiff started treating with a specialist, whom he saw once a month.  (TR 35.)  Plaintiff indicated, however, that he no longer saw the specialist, so he saw Dr. Baul once a month.  (TR 35-36.)  Plaintiff testified that he took 800mg Motrin and 750mg Vicodin to control his pain.  He also indicated that he took medicine for his blood pressure and his cholesterol.  He told the ALJ that the medications did not cause any side effects and that they lowered his pain level from a nine to a six on a ten-point scale.  (TR 32.)  At the time of the hearing, Plaintiff was scheduled for a bone scan the following day.  (TR 36.)

With regard to his daily activities, Plaintiff testified that he generally stayed in his room and did "nothing really."  (TR 33.)  When asked to clarify, Plaintiff told the ALJ that he vacuumed the house, washed the dishes, cooked breakfast, and went shopping for groceries with his wife.  (TR 33, 34.)  He also went to the park across the street from his house.  (TR 34.)  Plaintiff further testified that he did not do yard work, and he did not drive because his license was suspended.  (TR 33-34.)

At the end of Plaintiff's testimony, the ALJ asked Plaintiff's attorney if he had any record of the monthly visits that Plaintiff referred to during his testimony.  (TR 36-37.)  Plaintiff's attorney indicated that there was only a record of one or two visits.  (TR 37.)  Plaintiff also indicated that the only supporting documentation for Plaintiff's back problems at the time of the hearing was a diagnosis of degenerative disc disease; there were no X-ray reports or other records available.  (TR 37-38.)  Plaintiff's attorney indicated that they were relying on the records from Plaintiff's 2004 car

3

jacking to support his claim of disability.[1]  (TR 38.)  Plaintiff's attorney stated that they were relying on the records of continuing treatment from this event and that the only record of that continuing treatment was Dr. Baul's questionnaire.  (TR 38-39.)

### B.   Medical Record

In June 2004, Plaintiff was admitted to St. John hospital with stab wounds to his chest, lung, pericardium, heart, back, left shoulder, left arm, and left flank.  Doctors performed various surgeries, and Plaintiff was ultimately discharged.  (TR 387-91.)  Three years later, in June 2007, Plaintiff again presented to St. John hospital after being punched in the right side of his face below his right ear.  (TR 208-09.)  Plaintiff had pain in his ear, jaw, teeth, and neck.  (TR 209-10.)  The hospital performed CT scans of Plaintiff's brain and cervical spine; both had negative results.  (TR 216-18.)

In December 2007, Plaintiff began to treat with his primary care physician, Dr. Terry Baul.  Unfortunately, as noted by both parties, treatment notes from Dr. Baul are almost entirely illegible.  (*See, e.g.*, TR 293.)  What can be discerned from these notes, however, is that Dr. Baul noted "HTN" (which Plaintiff suggests means hypertension) and "DJD" (which Plaintiff suggests means degenerative joint disease).

Future treatment notes from Dr. Baul are similarly illegible, but it is clear that Dr. Baul noted that Plaintiff complained of severe pain in February 28, 2008, and that Plaintiff had spinal tenderness.  Dr. Baul appears to have prescribed Robaxin.  (TR 279.)  In a September 13, 2008 chest X-ray, Plaintiff was found to have COPD, and in an October 2008 MRI, Plaintiff was noted as having mild disc diffusion at L4-5.  (TR 334, 343.)

---

[1]It appears that Plaintiff was stabbed in a 2004 car jacking, which resulted in several surgeries.  (*See* TR 208-211.)  Plaintiff was then assaulted in 2007, and he appears to argue that the injuries from his assault aggravated his old injuries, which, in turn, have caused his back problems.  (*See* docket no. 10-2 at 1-2.)

4

On July 15, 2008, Dr. Jack Kaufman completed a Physical RFC Assessment on behalf of the State. He determined that Plaintiff could lift and carry 50 pounds occasionally or 25 pounds frequently. He found that Plaintiff could stand, walk, or sit for six hours of an eight-hour day. He also noted that Dr. Baul's progress notes were illegible. (TR 233-40.)

On October 28, 2008, Dr. Baul completed a Multiple Impairment Questionnaire and diagnosed Plaintiff with lumbar disc disease, hypertension, hyperlipidemia, prostate cancer, anxiety, and depression. (TR 311-318.) Dr. Baul also included Plaintiff's symptoms and limitations in his assessment, all of which the Court will discuss in its analysis herein. (*See* TR 311-308.)

On November 25, 2008, Dr. Michael Cher noted that Plaintiff complained of visual disturbances, tinnitus, headaches, parasthesias, and syncopal episodes. (TR 274.) Dr. Cher referred Plaintiff for a neurological evaluation, but there is no record of Plaintiff ever attending such an evaluation. (TR 275.)

On January 3, 2009, Plaintiff was admitted to the hospital complaining of body aches and chronic back and chest pain. (TR 360-62.) He was discharged with a low likelihood of coronary artery disease. (TR 377-79.) On February 23, 2009, Plaintiff had a protestatectomy. (TR 246, 262-65.) He returned to the hospital twice with complications, but he was recovering well as of April 14, 2009.

Plaintiff appears to have continued to see Dr. Baul on a monthly basis through at least January 26, 2010, but the records from these visits are either missing or entirely illegible. Nevertheless, on January 26, 2010, Dr. Baul completed a second Multiple Impairment Questionnaire. (TR 393-400.) As Plaintiff notes, his questionnaire was "largely unchanged," but it was not entirely consistent with his first assessment. (*See* docket no. 10-2 at 3.) Again, the Court will address the details of Dr. Baul's second questionnaire in its analysis herein.

5

### C.       The Vocational Expert

The VE testified that Plaintiff's past relevant work as a laundry laborer, as performed, was light, unskilled work.  (TR 39.)  The ALJ then asked the VE if a person of Plaintiff's age, experience, and education, limited to performing light work, carrying not more than 20 pounds occasionally and 10 pounds frequently, who was limited to performing simple tasks, could perform Plaintiff's past relevant work.  (TR 40.)  The VE testified that such a person could perform Plaintiff's past relevant work.  (TR 40.)  The VE then testified that there were be no jobs available for such a person if the person were also off task more than 20 percent of each day.  (TR 40.)

Plaintiff's attorney then asked if such a person could perform Plaintiff's past relevant work if the person also required a sit/stand option or if the person could not stand for more than two hours in an eight-hour work day.  (TR 40-41.)  The VE testified that a person with either of those limitations would not be able to perform Plaintiff's past relevant work.  (TR 40-41.)

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through March 31, 2010; had not engaged in substantial gainful activity since August 13, 2006; and suffered from severe lumbar disc disease;[2] he did not have an impairment or combination of impairments that met or equaled the Listing of Impairments.  (TR 14-15.)  The ALJ found that Plaintiff's allegations regarding the extent of his symptoms were not wholly credible (TR 17) and, thus, found that Plaintiff could perform his past relevant work.  (TR 15-18.)  Therefore, he was not suffering from a disability under the Social Security Act at any time from August 13, 2006, through March 31,

---

[2]The ALJ also found that Plaintiff suffered minimal functional limitations caused by non-severe impairments, including a history of prostate cancer, a history of intracardiac trauma, a history of facial contusions, hypertension, and hypterlipidemia.  (TR 14.)

2010, Plaintiff's date last insured.  (TR 18.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.    Framework for Social Security Determinations

7

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six

8

remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  Plaintiff argues that Defendant's decision should reversed or remanded under sentence four because (1) the ALJ failed to follow the treating-physician rule and (2) the ALJ failed to properly evaluate Plaintiff's credibility.  (*See* docket no. 10-2.)

### 1.    Weight of the Medical Opinions

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician.  *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008).  Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight."  *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).  The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant.   20 C.F.R. § 404.1527(c)(1).  The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist.  20 C.F.R. §404.1527(e).

9

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Plaintiff asserts that the ALJ erred when he gave "limited weight" to Dr. Baul's opinions because the ALJ relied solely on Plaintiff's "limited household activities" to determine that Dr. Baul's opinion was inconsistent with the record as a whole. (Docket no. 10-2 at 5-6.) Moreover, Plaintiff argues, even if Dr. Baul's opinion was not entitled to controlling weight, the ALJ did not base his decision on any affirmative medical evidence, and therefore, "it must be assumed that [the ALJ's decision] is simply his impermissible lay interpretation of the raw medical data." (*Id.* at 7-8.) Defendant contends that while Dr. Baul opined that Plaintiff had disabling back, hip, and knee pain and hand tremors, his records are completely devoid of any objective evidence of such conditions,

10

with the noted exception of one MRI from 2008 showing a "mild diffuse disc bulge." (Docket no. 13 at 12-13 (citing TR 343-44).) Therefore, Defendant asserts, the ALJ "weighed the medical evidence and Plaintiff's testimony and was justified in determining that Plaintiff was capable of performing his past relevant work." (*Id.* at 15.)

Between Dr. Baul's two Multiple Impairment Questionnaires, he diagnosed Plaintiff with Degenerative Joint Disease of the Spine and Hip, Lumbar Disc Disease, Hypertension, Hyperlipidemia, Prostate Cancer, Anxiety, Depression. (TR 311, 393.) In his first questionnaire, he noted that Plaintiff had back pain, neck pain, knee pain, dizziness, headaches, and tremors of the hands. (TR 312.) In his later questionnaire, he noted that Plaintiff had back pain, hip pain, shortness of breath, and (what appears to be, although it is difficult to read) impotence. (TR 394.) Dr. Baul's first questionnaire indicates that the pain is along Plaintiff's "entire spine," while his second questionnaire indicates that the pain is along Plaintiff's "lumbar spine." (TR 312, 394.) In both questionnaires, Dr. Baul indicated that Plaintiff's pain and fatigue levels were at a nine on a ten-point scale. (TR 313, 395.) In his first questionnaire, Dr. Baul opined that Plaintiff could sit for seven hours and stand or walk for one hour in an eight-hour day. (TR 313.) In his later questionnaire, Dr. Baul opined that Plaintiff could sit for six hours and stand or walk for two hours. (TR 395.) Dr. Baul stated in both questionnaires that Plaintiff would have to stand for 30 minutes before he could sit again. (TR 314, 396.) In both questionnaires, Dr. Baul opined that Plaintiff could lift or carry up to five pounds and was moderately limited in his ability to grasp, turn, or twist objects. (TR 314, 396.) In his first opinion, Dr. Baul indicated that Plaintiff was moderately limited in his ability to use his hands and fingers for fine manipulations and markedly limited in his ability to use his arms for reaching. (TR 315.) In his later opinion, Dr. Baul indicated that Plaintiff had no limitations in using his fingers and hands for fine manipulation and minimally limited in his ability

11

to use his arms for reaching.  (TR 397.)  In Dr. Baul's earlier questionnaire, he indicated that

Plaintiff's symptoms were "constant" and that he could not handle even a low-stress environment,

while he indicated in his later questionnaire that Plaintiff's symptoms were "frequent" and that he

*was* capable of working in a low-stress environment.  (TR 316, 398.)  Dr. Baul's earlier assessment

indicated that Plaintiff had psychological limitations, that he needed to avoid wetness, fumes, gases,

temperature extremes, humidity, and dust, and that he could not push things.  (TR 317.)  His later

assessment added that Plaintiff also needed to avoid heights, pulling, kneeling, bending, and

stooping.  (TR 399.)  Dr. Baul's first assessment indicated that Plaintiff's symptoms date back to the

year 2000 while his later assessment indicated that Plaintiff's symptoms date back to 2006.  (TR

317, 399.)

The ALJ began his analysis of Dr. Baul's opinions by comparing the two assessments.  (*See*

TR 16-17.)  He then noted that Dr. Baul's assessments were not supported by any objective medical

tests and that the limitations that Dr. Baul placed on Plaintiff were inconsistent with Plaintiff's

testimony that he could vacuum, cook, clean, shop, wash dishes, and generally care for himself.  (TR

17.)  This, however, was the extent to which the ALJ addressed the "limited weight" that he gave

to Dr. Baul's opinions; the ALJ did not discuss the factors set forth in 20 C.F.R. § 404.1527(c).

Nevertheless, the Sixth Circuit has upheld the decision of an ALJ to give less than

controlling weight to a treating physician without specifically analyzing the factors set forth in 20

C.F.R. § 404.1527(c) if the ALJ provides "good reason" for the decision.  *See Infantado v. Astrue*,

263 Fed.Appx. 469, 473-74 (6th Cir.2008).  There is no per se rule that requires an articulation of

each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6).  *Norris v. Comm'r*, No.

11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed.

Appx. 216, 222 (6th Cir. 2010)).   Moreover, an ALJ's failure to discuss the factors of §

1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently

deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the

opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the

Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of

reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*,

195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir.

2004)).  "An opinion may be patently deficient if the treating source offers no explanation to support

it." *Fleming v. Comm'r*, No. 10-25, 2011 WL 3049146 at *9 (E.D. Tenn. July 5, 2011) (citing *May

v. Astrue*, 09-00090, 2009 WL 4716033 at *8 (S.D. Ohio Dec. 9, 2009) (finding a treating source

opinion patently deficient where the treating source simply checked boxes about the plaintiff's

alleged disability and failed to provide supporting explanations or objective evidence.").

Here, the ALJ considered the entire case record and discussed in detail the medical opinions

of Plaintiff's treating physicians and the state-examining expert.  (TR 15-17.)  The ALJ

acknowledged that Dr. Baul had a treating relationship with Plaintiff from at least December 2007

through October 2009 and noted that Plaintiff sought treatment on a monthly basis.  (TR 16.)  The

ALJ also noted that the conclusions made in Dr. Baul's assessments were not supported by objective

physical findings.  (TR 17.)  The Court agrees; in the reports at issue, Dr. Baul fails to offer any

explanation to support his conclusions.  To the contrary, the ALJ noted a whole-body scan and an

MRI in 2008 that showed no metastatic disease and no enlarged prostate.  (TR 16.)  Additionally,

Dr. Baul's questionnaires conflict with each other with regard to Plaintiff's limitations.  Moreover,

as indicated by Plaintiff's attorney, Plaintiff relies on his "continuing treatment" to support Dr.

Baul's opinions, not on any objective evidence.  (TR 38-39.)  Therefore, the Court concludes that

13

the ALJ provided good reasons for affording limited weight to Dr. Baul's reports, and Plaintiff's

Motion should be denied with regard to this issue.[3]

### 2. Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight

and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor

and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But Credibility

assessments are not insulated from judicial review. Despite the deference that is due, such a

determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility

determination must contain "specific reasons . . . supported by the evidence in the case record, and

must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR

96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been

considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all,

only some, or none of an individual's allegations to be credible" and may also find the statements

credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by

the objective medical evidence in the record, the Regulations explicitly provide that "we will not

reject your statements about the intensity and persistence of your pain or other symptoms or about

---

[3]Plaintiff also alleges that the ALJ impermissibly "split the baby" with regard to
Plaintiff's RFC because the ALJ's decision was not supported by the assessment of any
physician of record. (Docket no. 10-2 at 8 (citing *Eakin v. Astrue*, 432 Fed. App'x. 607 (7th Cir.
2011).) But while such an "evidentiary deficit" may be reversible error, *Suide v. Astrue*, 2010
WL 1508510, at *6 (7th Cir. 2010), the ALJ need not articulate every piece of evidence in a
claimant's record; rather, the ALJ simply needs to construct "an accurate and logical bridge
between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). More
importantly, however, as Plaintiff notes, such a rule does not exist in the Sixth Circuit.

14

the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff first asserts that the ALJ applied the wrong legal standard because he found that Plaintiff's statements were not credible "to the extent they [were] inconsistent with the [ALJ's RFC]" instead of with the record as a whole. (Docket no. 10-2 at 10.) In support of this contention, Plaintiff cites to *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012), in which the court found this standard "template" unintelligible. While the Court agrees with Plaintiff that such a finding would be erroneous, and while the Court agrees with the Seventh Circuit that the template language should be clarified, the Court does not agree that the ALJ made such a finding. The ALJ's comment refers to the RFC located in the section heading of his decision, which is analyzed therein. Thus, when the ALJ stated that Plaintiff's limitations were not credible "to the extent they are inconsistent with the RFC," the ALJ was merely stating that he developed the RFC based on the limitations that he did find credible. Therefore, the Court finds that the ALJ's decision in this regard was not contrary to law.

Plaintiff then argues that (1) the ALJ erred when he principally relied on Plaintiff's daily activities in determining that Plaintiff's testimony was not credible, (2) the ALJ erred when he found that Plaintiff's MRI did not support his testimony, and (3) the ALJ erred when he did not consider

Plaintiff's testimony regarding "his symptoms, resulting limitations, limited daily activities, and lack of improvement with treatment."  (Docket no. 10-2 at 10-11.)  Defendant asserts that "[t]he ALJ carefully considered the lack of medical evidence, Plaintiff's daily activities, and Plaintiff's testimony" in reaching his decision.  (Docket no. 13 at 17.)

> In assessing Plaintiff's credibility, the ALJ found as follows:

> The claimant alleges that he cannot work because of serious injuries sustained from a carjacking in 2004.  The claimant alleges that he has scar tissue and back pain from degenerative disc disease.  The claimant alleges that he has trouble standing, walking and lifting and as a result, he "Grids" under 201.09, and is disabled.  However, the claimant testified that he cooks, washes dishes, cleans the house and vacuums.  The claimant said that he could go shopping with his wife.  On the Function Report, dated April 9, 2008, the claimant wrote that he had no problem dressing, bathing, caring for his hair, shaving, feeding himself, or using the toilet.  The claimant said that he could only sit for 15 minutes and stand for 10 or 15 minutes.  But, Dr. Baul opined that the claimant was capable of sitting for 6 hours and standing/walking for 2 hours.  This conflicting evidence undermines the claimant (sic) credibility. . . .

> The claimant has a history of lumbar disc disease.  Medical scans on October 20, 2008, showed mild diffused disc bulge at L4-5.  However, there was no evidence of mass effect, spinal canal stenosis, or neural foraminal narrowing.  No objective medical evidence indicates that the claimant has scar tissue from his stab wounds that causes him daily pain.  The only evidence of a serious impairment is the disc bulge at L4-5.

(TR 17.)

The Court finds that the ALJ did not err in his assessment of Plaintiff's credibility.  The ALJ specifically considered Plaintiff's testimony regarding his subjective complaints of pain, he discussed the Plaintiff's daily activities, he noted inconsistency with Dr. Baul's report, and he evaluated the objective medical evidence and the lack thereof.  Moreover, the ALJ noted "claimant said that he takes pain medication and cholesterol medication, and he has no side effects.  The claimant said that his pain is at 9/10 without the medication and 6/10 with pain medication."  (TR 15.)  Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and the Court the

16

weight given to Plaintiff's statements and the ALJ's reasons for that weight. The ALJ could reasonably conclude that Plaintiff's subjective complaints regarding the severity of his symptoms and the impact of those symptoms were not entirely credible. Therefore, even if the Court disagrees with the ALJ, his determination is supported by substantial evidence, and therefore, the Court recommends denying Plaintiff's Motion with regard to this issue.

## VI.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 10) should be DENIED, and Defendant's Motion for Summary Judgment (docket no. 13) should be GRANTED.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

17

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


Dated: May 2, , 2013              s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE



                         **PROOF OF SERVICE**

       I hereby certify that a copy of this Report and Recommendation was served upon Counsel
of Record on this date.

Dated: May 2, 2013                 s/ Lisa C. Bartlett
                                  Case Manager


                                    18